UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

---

In re:                                                                        Case No.: 17-13809-13

TRISTAN P. McGOUGH and
LYNNAE R. McGOUGH,

                          Debtors.

---

## **MEMORANDUM DECISION**

Tristan and Lynnae McGough ("Tristan," "Lynnae," or "Debtors") filed a chapter 13 in this Court. Three creditors filed claims asserted to be secured by the Debtors' home. These claims, in order of the dates of their recording, are:

| | |
|---|---|
| U.S. Bank National Association | $176,516.33 |
| Citibank, N.A. | $52,968.34 |
| First Tennessee Bank National Association | $15,666.25 |

Debtors objected to Citibank, N.A.'s ("Citibank") claim, stating (1) the claim of First Tennessee Bank National Association ("First Tennessee") is superior to the claim of Citibank because a release of the Citibank mortgage should have been filed, and (2) the combined value of the U.S. Bank National Association ("U.S. Bank") and First Tennessee loans exceeds the value of the home and so Citibank is unsecured. Debtors later argued the Citibank mortgage was defective and invalid based on the lack of notarization of Lynnae's signature.

Following an evidentiary hearing, the Court determined the value of the home is $190,000. The first position lien of U.S. Bank is undisputed. As a result, there is $13,483.77 in equity available for the second priority lien.

Briefs have been submitted on the issue of priority and effect of the missing notarization.

### ADDITIONAL FACTS

In 2005, Tristan borrowed $139,125.00 from World Savings Bank ("World Savings"), obtained a HELOC from Citibank ("Citibank HELOC") with a credit limit of $46,375.00, and granted both lenders mortgages in property located at 108 West Ridge Circle, Cambridge, Wisconsin.[1] Citibank recorded its mortgage on August 4, 2005, in the Dane County Register of Deeds Office. Both Tristan's and Lynnae's signatures appear on the mortgage conveyance, but only Tristan's is notarized. ECF No. 101-6.

On September 26, 2007, Debtors refinanced through First Tennessee. A Title Insurance Commitment was prepared ("Commitment"). The Commitment contained a requirement for satisfaction of both the World Savings and Citibank mortgages. The World Savings mortgage was paid at closing. A payment was also made on the Citibank HELOC.[2]

First Tennessee received two mortgages: one for the pay-off of the first mortgage to World Savings and another for paying down the Citibank HELOC. Both of those mortgages were recorded on October 1, 2007, in the Dane County Register of Deeds Office. ECF No. 101-4.

---

[1] Title may initially have been in Tristan's name alone, although no copy of the original title was presented. Evidence was presented that Tristan executed a quitclaim deed to himself and Lynnae, recorded on August 31, 2006.

[2] The HUD closing statement lists the amount for "Mortgage Payoff to Citibank" as $46,195.78. ECF No. 101-1 at 3. A check in the amount of $45,690.46 was sent to Citibank. ECF No. 101-1 at 2.

2

First Tennessee never obtained a release or satisfaction of Citibank's lien, nor did Citibank ever close the HELOC. On September 20, 2007, Debtors signed a letter to Citibank asking Citibank to "[p]lease close the . . . Line of Credit." ECF no. 101-2 at 38. Tristan did not personally deliver the letter, nor does he recall how it was sent to Citibank.

On October 5, 2007, Citibank sent a letter to Tristan acknowledging receipt of funds to be applied to the HELOC. Citibank also stated that if he wanted to have the lien released, "the attached form must be signed and returned . . . ." ECF No. 97-6. The form also warned, "If CitiMortgage does not receive this form within thirty (30) days, all funds received will be considered a pay down and the account will remain open. Additional account fees may be incurred." *Id.*

Debtors did not fill out or return the form. As a result, the account remained open and Citibank did not release its lien. Between February 2008 and 2012, Tristan drew on the Citibank HELOC in the amount of $45,837.19.

First Tennessee assigned its first mortgage to Nationstar and then to U.S. Bank. U.S. Bank and Citibank entered into a stipulation confirming U.S. Bank's mortgage has priority over Citibank's.[3] ECF No. 99 at 2.

This Court ruled the fair market value of Debtors' homestead is $190,000.00. There is $13,483.77 in equity remaining after the U.S. Bank claim. If First Tennessee's mortgage has priority over Citibank, First Tennessee is secured in the amount of $13,483.77, and Citibank is wholly unsecured. If

---

[3] This decision does not impact the stipulation between U.S. Bank and Citibank.

Citibank has priority over First Tennessee, Citibank is secured in the amount of $13,483.77 and First Tennessee is unsecured.

## DISCUSSION

A. <u>Citibank holds a valid mortgage</u>.

A valid mortgage enables Citibank to enforce its rights against the Debtors. Wisconsin Statutes section 706.02 outlines the formal requirements for a mortgage to be valid. Conveyances of real property will not be valid unless evidenced by a conveyance that satisfies all of the following:

> (a) identifies the parties;
>
> (b) identifies the land;
>
> (c) identifies the interest conveyed, and any material terms, conditions, or contingencies upon which the interest is to arise;
>
> (d) is signed by or on behalf of each grantor;
>
> . . .
>
> (f) is signed by or on behalf of each spouse, if the conveyance alienates any interest of a married person in a homestead; and
>
> (g) is delivered.

Wis. Stat. § 706.02(1)(a)-(g).

Citibank's mortgage satisfies those statutory requirements. It is evidence of a transaction between Citibank and Debtors. It identifies the parties, land, and interest conveyed. The grantors signed it. The document was undisputedly signed by both Tristan and Lynnae. ECF No. 101-6. The mortgage was delivered. The mortgage lien is valid as between Citibank and Debtors. The

importance of recording concerns notice to future lenders who seek security in the same real estate. It has no effect on the relationship between the Debtors and lender.[4]

> B. <u>Citibank's mortgage should be considered recorded and perfected notwithstanding its failure to authenticate Lynnae's signature, and Citibank's claim is superior to First Tennessee's.</u>

Chapter 706 of the Wisconsin Statutes contemplates that conveyances satisfying the formal requisites will be recorded. *See Seelen v. Couillard (In re Couillard)*, 486 B.R. 466, 472 (Bankr. W.D. Wis. 2012) (citing *Kordecki v. Rizzo*, 106 Wis. 2d 713, 718 (Wis. 1982)). Perfection provides notice of earlier conveyances from the title record. Wis. Stat. § 706.09. A creditor must perfect its security interest to have priority over subsequent secured creditors. Wisconsin is a race-notice jurisdiction. *Id.* § 706.11(1). Thus, the first to file and duly record its lien has priority over all other liens upon the mortgaged property. *Id.* The requirements for recordation are contained in Wisconsin Statutes section 706.05.

---

[4] Wis. Stat. § 706.08(1)(a) states in relevant part:

> [E]very conveyance that is not recorded as provided by law shall be void as against any subsequent purchaser, in good faith and for valuable consideration, of the same real estate or any portion of the same real estate whose conveyance is recorded first.

The lien exists on the property regardless of the mortgage not being recorded. Wis. Stat. § 708.01 states:

> A mortgage on real property creates a lien on the property mortgaged; except for the lien and subject to s. 708.11, the mortgagor retains the interest that the mortgagor had at the time of mortgage until that interest is divested by some later act.

5

*1. Citibank perfected its mortgage.*

Every instrument or conveyance which affects title to land in Wisconsin is entitled to recording in the office of the register of deeds of each county in which land affected thereby may lie. *Id.* § 706.05(1). When offering an instrument for recording, the instrument shall bear such signatures as required by law and contain a form of authentication authorized by sections 706.06 or 706.07. *Id.* § 706.05(2). Authentication can be done in many ways, including by a public notary. *Id.* § 706.07(2).

The absence of an element for recordation under section 706.05 is not, however, the end of the analysis. "Every instrument which the register of deeds shall accept for record *shall be deemed duly recorded* despite its failure to conform to one or more of the requirements of [section 706.05], provided the instrument is properly indexed in a public index maintained in the office of such register of deeds and recorded at length at the place there shown."[5] *Id.* § 706.05(7) (emphasis added).

A mortgage can secure future advances, and a lien attaches at the time of the mortgage even though advances are made later. *Capocasa v. First Nat'l Bank of Stevens Point*, 36 Wis. 2d 714, 719 (Wis. 1967). Thus, the lien relates back, for the purpose of determining priority, to the date the mortgage containing a future advance clause was executed and subsequently recorded. The Citibank HELOC included future advances.

---

[5] There is no evidence that the Citibank mortgage was not properly indexed.

The Citibank mortgage complied with all but one of the requirements for recordation provided in section 706.05. Tristan's signature is notarized, but Lynnae's is *not* notarized or otherwise authenticated. Even so, the recorder's office accepted the mortgage for recording. Instruments accepted for record are deemed duly recorded despite failure to authenticate properly. Wis. Stat. § 706.05(7).

Equity supports this outcome. The recording statute is designed to force the recording of all instruments so the record will show the complete history of title and protect innocent third parties who rely on the record and would possibly be misled by the absence of a recorded interest. *Kordecki*, 106 Wis. 2d at 719. The recording statutes disfavor those who mislead others by *failing to record* their interest and gives priority to those who rely on the record and transact in good faith. *Bank of New Glarus v. Swartwood*, 297 Wis. 2d 458, 477 (Wis. Ct. App. 2006) (emphasis added). "Implicit is the understanding that the subsequent purchaser is deserving of priority because it checked the record and was misled . . . by the prior interest holder's failure to . . . record its interest." *Id.* at 477–78.

Wisconsin case law treats harshly those who do not record at all, and looks more favorably upon parties who record, even if the document lacks in some regard. *Mortg. Lenders Network v. Wangert-Fitzgerald*, No. 04-0283, 2004 WL 2601157, at *3 (Wis. Ct. App. Nov. 17, 2004) ("A search of the record title at the time the mortgage was recorded would have revealed . . . the quitclaim deeds . . . ."). A recorded instrument is notice of the tenor and effect of the

instrument "as it appears upon that record," even if imperfect. *Pringle v. Dunn*, 37 Wis. 449, 465 (Wis. 1875) (analyzing whether a recorded mortgage provided constructive notice even though no attesting witnesses were in the document filed). Thus, "the record itself is . . . constructive notice of its contents" even if defective in some regard. *Id.* at 462–63.

Other bodies of law provide that filings can be effective even if they contain minor errors or omissions. For example, the Wisconsin Uniform Commercial Code provides that a financing statement "substantially satisfying" the requirements of perfection is valid even if it has "minor errors or omissions, unless the errors or omissions make the financing statement seriously misleading." Wis. Stat. § 409.506(1). A financing statement is not seriously misleading so long as a search of the filing office's records, using the filing office's standard search logic, reveals the record in question. *Id.* § 409.506(3).

Citibank's mortgage was accepted for recording, even if it should not have been. The recording put the world on notice of its mortgage. A title search did reveal Citibank's mortgage. First Tennessee was aware of the mortgage when making its loans to Debtors. First Tennessee has a title commitment confirming release of Citibank's mortgage would be required to afford First Tennessee priority. First Tennessee is not the innocent party the recording statutes were designed to protect.

Because Citibank's mortgage was accepted for recording, First Tennessee had notice based on the record. First Tennessee knew its funds were being used to pay down Citibank's HELOC. ECF No. 101-2 at 17. This is not a

8

situation in which a party failed to file and a later party relied to its detriment on the lack of any recorded interest. If there was any reliance by First Tennessee, it was on the title commitment and title company obtaining a release and not on the absence of a mortgage of record.

> 2. *Debtors' cannot argue equitable subrogation. Thus, this Court reaches no conclusion on First Tennessee's potential basis to argue subrogation.*

One potential exception to race-notice priority is subrogation. "Subrogation is an equitable doctrine to avoid unjust enrichment, and may properly be applied whenever a person other than a mere volunteer pays a debt which in equity and good conscience should be satisfied by another." *Rock River Lumber Corp. v. Universal Mortg. Corp. of Wisconsin*, 82 Wis. 2d 235, 240 (Wis. 1978). "[T]he right of a party to subrogation . . . depends upon (1) his being secondarily liable; or (2) the necessity for acting to protect his own interests; or (3) an agreement that he is to have security." *Bank of Baraboo v. Prothero*, 215 Wis. 552, 558 (Wis. 1934).

A *lender* will be granted subrogation where (1) money is advanced relying on a justifiable expectation that the lender will have security equivalent to that which his advances have discharged, (2) provided no innocent third parties will suffer. *Rock River Lumber Corp.*, 82 Wis. 2d at 241 (emphasis added). Ultimately, subrogation is a "balancing of the equities." *Id.* at 242.

First Tennessee had an opportunity to assert its priority. It was not secondarily liable on Debtors' prior mortgages. It had no need to lend Debtors money or pay off the prior mortgages to protect its own interest. First

Tennessee received its agreed security—a mortgage. That it did not obtain or assure the title company obtained a release of the Citibank mortgage is not a ground for invoking equity. Neither does that mean it may be without remedy.

Here, subrogation is the *lender's* argument to make, not the Debtors'. *Red Rock Lumber* makes clear subrogation is the *lender's* remedy to pursue. *Id.* at 246 ("[A] lender's right to subrogation may be lost . . . ."). Debtors are not a competing or subsequent claimant, nor are they trying to protect *their own* interest. In sum, Debtors cannot make First Tennessee's argument for it.[6]

If there is an innocent third party, it is Citibank. The controversy over who holds a second mortgage and whose lien may be avoided is a problem of Debtors' and First Tennessee's own making. Debtors knew they had not closed the Citibank HELOC. They did not return the required forms and were aware failure to do so would mean the HELOC remained open. They knew the HELOC was secured by a mortgage they both signed. They continued to make withdrawals against the HELOC. Based on Debtors' failure to fill out the close out authorization form, Citibank understood those draws to be secured by its second priority mortgage. First Tennessee remitted funds toward payment of the Citibank HELOC without ever obtaining a release or satisfaction. It did not follow up with the title insurer to confirm a release was obtained. It knew the Citibank mortgage secured a HELOC and that future advances were possible. Had First Tennessee obtained a release, the Citibank HELOC would have been

---

[6] First Tennessee filed a proof of claim but has not otherwise made an appearance in this case.

closed and the mortgage satisfied. The parties would then not be litigating this issue before the Court.

## CONCLUSION

Citibank holds a valid, perfected mortgage against the Debtors' homestead. Debtors are not the proper party, if any, to argue subrogation on First Tennessee's behalf. Because Wisconsin is a race-notice jurisdiction and Citibank recorded its mortgage before First Tennessee, Citibank's claim is superior to First Tennessee's. The balance of the equities favors Citibank and subrogation, therefore, is denied.

This decision is made without prejudice to the right of First Tennessee, if timely and appropriate, to seek to address any claims it may assert vis-à-vis Citibank.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: October 26, 2018

BY THE COURT:

_____
Hon. Catherine J. Furay
U.S. Bankruptcy Judge